SEMNAR & HARTMAN, LLP
Babak Semnar (SBN 224890)
bob@sandiegoconsumerattorneys.com
Jared M. Hartman (SBN 254860)
jared@sandiegoconsumerattorneys.com
400 S. Melrose Dr., Suite 209
Vista, CA 92081
Telephone: (951) 293-4187; Fax: (888) 819-8230

Attorneys for Plaintiff, ROSARIO MERCADO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROSARIO MERCADO, an individual,<br><br>          Plaintiff,<br><br>     vs.<br><br>MOUNTAIN LION ACQUISITIONS INC., and DOES 1-10;<br><br>          Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br>  **1. FEDERAL FAIR CREDIT REPORTING ACT,**<br>  **2. CALIF. CONSUMER CREDIT REPORTING AGENCIES ACT**<br>  **3. BREACH OF CONTRACT** |

TO THE CLERK OF THE COURT, ALL PARTIES, AND THE HONORABLE CALIFORNIA SUPERIOR COURT JUDGE:

Plaintiff, ROSARIO MERCADO, an individual, by and through his attorneys of record, BABAK SEMNAR and JARED M. HARTMAN of SEMNAR & HARTMAN, LLP, hereby complains and alleges as follows.

## INTRODUCTION

1. ROSARIO MERCADO, ("Plaintiff"), by and through her attorneys, brings this Complaint against Defendant MOUNTAIN LION ACQUISITIONS INC., (hereinafter "Defendant" or "MOUNTAIN LION"), and Does 1-10, for failing to conduct a reasonable investigation into a written dispute and failing to update/modify/delete inaccurate information, all of which have caused Plaintiff

1
**Complaint for Damages and Injunctive Relief**

damages in violation of 15 U.S.C. §1681s-2(b), as well as state law cause of action for breach of contract and furnishing inaccurate/incomplete/misleading information in violation of Calif. Civ. Code §1785.25(a).

## JURISDICTION & VENUE

2. This action arises out of Defendants' violations of the FCRA, over which the U.S. District Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p. Jurisdiction arises pursuant to 28 U.S.C. §1367 for supplemental state claims.

3. Because Defendant regularly conducts business within the State of California, personal jurisdiction is established.

4. Because all tortious conduct occurred while Plaintiff resided in the County of San Bernardino, City of Alhambra, and witnesses are present within the County of San Bernardino, venue properly lies in this court pursuant to 28 U.S.C. §1391.

## PARTIES & DEFINITIONS

5. Plaintiff is a natural person whose permanent residence is in the City of Alhambra, County of San Bernardino, State of California.

6. Defendant regularly does business in the County of San Bernardino, State of California by directly contacting residents therein for purposes of debt collection, including availing itself of the court systems therein by filing debt collection lawsuits against residents of the County of San Bernardino.

7. Plaintiff is a natural person, and is therefore a "consumer" as that term is defined by 15 U.S.C. § 1681a(c) of the Federal FCRA.

8. The causes of action herein partially pertain to Plaintiff's "consumer credit reports", as that term is defined by Calif. Civ. Code § 1785.3(c) of the California CCRAA and 15 U.S.C. § 1681a(d)(1) of the Federal FCRA, in that inaccurate misrepresentations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or

in part, for the purpose of serving as a factor in establishing Plaintiffs' eligibility for, among other things, credit to be used primarily for personal, family, or household purposes, and employment purposes.

9. The causes of action herein also pertain to Plaintiff's "'consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiffs' credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiffs' eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

10. As it pertains to the California CCRAA and the Federal FCRA, Defendant is a partnership, corporation, association, or other entity, and is therefore a "person" as that term is defined by Calif. Civ. Code § 1785.3(j) of the California CCRAA and 15 U.S.C. § 1681a(b) of the Federal FCRA.

## FACTUAL ALLEGATIONS

11. In November 2016, Plaintiff and Defendant entered into a written agreement that required Defendant to submit a request to delete any and all negative tradelines associated with a particular debt collection account within 30 days of full execution of the written agreement and to waive/release any claim that Plaintiff may owe any sum to Defendant upon the debt collection account.

12. Defendant executed the written agreement on November 28, 2016.

13. Plaintiff executed the written agreement on December 5, 2016.

14. Therefore, Defendant had until January 5, 2017 to submit a request to delete the negative tradeline of the debt collection account in order to comply with the written agreement.

15. On or about January 12, 2017, Plaintiff discovered that her Trans Union consumer credit report still reflected the negative tradeline that Defendant agreed to

delete.

16. Plaintiff discovered that Defendant updated this tradeline with Trans Union on January 4, 2017, and that after Defendant's January 4th update the reporting inaccurately indicates that the account is "in collections", is an "open account", and is "past due $5,075.00".

17. However, as of the date of final execution of the written agreement by Plaintiff on December 5, 2016, it was inaccurate for anyone to claim that the account is "in collections", is an "open account", and is "past due $5,075.00".

18. Plaintiff caused to be delivered to Trans Union a written dispute letter dated January 12, 2017 that specifically indicated that the tradeline was to have been deleted, and specifically requested that Trans Union notify Defendant that the tradeline is being disputed and that an investigation must result in the tradeline being deleted.

19. Tracking information from the U.S. Postal Service certified mail return receipt shows that the dispute letter was delivered to Trans Union on January 17, 2017.

20. On or about February 10, 2017, Plaintiff was informed by Trans Union that Defendant never once requested that the negative tradeline be deleted from Plaintiff's Trans Union consumer credit report or credit file.

21. Plaintiff was also informed by Trans Union her January 12th written dispute was received by Trans Union, Trans Union processed the dispute letter by notifying Defendant of the dispute through an "Automated Consumer Dispute Verification" process, and Defendant confirmed the reporting of the account as accurate and failed to request that the tradeline be deleted.

22. As a result, Plaintiff's attempts to obtain Defendant's compliance with the 2016 agreement have gone unfulfilled and her only remedy is to pursue formal legal action to enforce compliance therewith.

23. Plaintiff has been informed that at least two creditors have reviewed her Trans Union report on January 9, 2017 and January 16, 2017, which contained the negative tradeline that should have been deleted before Defendant by those dates.

4
**Complaint for Damages and Injunctive Relief**

24. Upon information and belief, Defendant's violations of the above are willful, because Defendant knowingly and deliberately ignored its obligation to delete the negative tradeline and deliberately refused to request such deletion upon being notified by Trans Union of Plaintiff's written dispute.

25. Plaintiff has been damaged by way of mental anguish and emotional distress such as anger, nervousness, embarrassment, loss of sleep, and feelings of distraught and helplessness.

## FIRST CAUSE OF ACTION
## FEDERAL FAIR CREDIT REPORTING ACT
## 15 U.S.C. §§ 1681s-2(b)

26. Plaintiff repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

27. As the furnisher of information to credit reporting agencies, Defendant is and always was obligated to take the following steps upon receiving notice of a dispute by a credit reporting agency by 15 U.S.C. § 1681s-2(b)(1)(A)-(E) of the Federal FCRA.

28. Plaintiff submitted a written dispute to the consumer credit reporting agency Trans Union dated January 12, 2017, in which she specifically explained that a written agreement between her and Defendant required Defendant to delete the tradeline, and specifically requested that Trans Union inform Defendant of the dispute and to request that Defendant conduct an investigation therein and to then delete the tradeline.

29. Plaintiff has received confirmation from Trans Union that TU had forwarded the dispute to Defendant through the "Automated Consumer Dispute Verification" process so that Defendant could conduct a re-investigation of the reporting of the account.

30. However, Trans Union informed Plaintiff that Defendant had verified the reporting as accurate, instructed Trans Union to not make any changes to the reporting, and failed to instruct Trans Union to delete the tradline.

31. Therefore, Plaintiff is informed and believes that Defendant failed to conduct a reasonable investigation of their reporting, as required by 15 U.S.C. § 1681s-2(b), because all Defendant had to review was the written agreement that it signed on November 28, 2016.

32. Moreover, Defendant also failed to update/modify/delete the information, also in violation of 15 U.S.C. § 1681s-2(b).

33. Plaintiff is informed and believe that Defendant's violations of §1681s-2(b) were negligent at a minimum, because a reasonable person would have simply reviewed the account documents to confirm whether Defendant agreed to delete the tradeline, yet Defendant failed to undertake that simple task.

34. Plaintiff is also informed and believes that Defendant's violations of §1681s-2(b) were willful, in that they disregarded a high degree of risk that their refusal to simply review the account documents would result in their verifying false and inaccurate information, especially considering the fact that Defendant signed the written agreement November 28, 2016 that required Defendant to delete the tradeline.

35. As a result of these negligent and willful violations, Plaintiff has suffered actual damages as explained in the statement of facts above.

## SECOND CAUSE OF ACTION
## CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT
## Calif. Civ. Code § 1785.25

36. Plaintiffs repeat, re-allege, and incorporate by reference all other paragraphs, as if fully set forth herein.

37. As the furnisher of information to credit reporting agencies, Defendant is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if it knew or should have known the information was incomplete or inaccurate, as required by Calif. Civ. Code § 1785.25(a) of the California CCRAA.

38. Even if the derogatory reporting is technically accurate, it is still a

violation of this law if the derogatory reporting is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. *Cisneros v. U.D. Registry, Inc.* (1995) 39 Cal. App. 4th 548.

39. Defendant violated its obligations under Section 1785.25(a) of the Calif. CCRAA by updating the negative reporting of the account on January 4, 2017 to inaccurately claim that the account is "in collections", is an "open account", and is "past due $5,075.00" and thereafter claiming to Trans Union that the reporting was accurate in response to Plaintiff's January 12th written dispute.

40. Such false and inaccurate reporting has caused Plaintiff actual damages as explained in the statement of facts above.

41. Plaintiff is informed and believes that Defendant's violations were negligent at a minimum, but were willful in that Defendant acted with such a high degree of risk of committing a legal violation that was higher than mere carelessness, because Defendant executed the written agreement on November 28, 2016 that required it to waive/release any claim against Plaintiff that she owes any sum to Defendant upon the account.

42. This cause of action is not pre-empted by the Federal FCRA, because 15 U.S.C. § 1681t(b)(1)(F)(ii) explicitly saves from pre-emption any cause of action for violation of §1785.25(a).

**THIRD CAUSE OF ACTION**
**BREACH OF CONTRACT**

43. Plaintiff repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

44. Defendant and Plaintiff executed a written agreement on November 28, 2016 and December 5, 2016, respectively.

45. Defendant failed to comply with this agreement by failing to request, within 30 days of Plaintiff's execution of the agreement, that Trans Union delete any negative reporting of the tradeline.

46. Defendant also failed to comply with this agreement by updating the negative reporting of the account on January 4, 2017 to inaccurately claim that the account is "in collections", is an "open account", and is "past due $5,075.00" and thereafter claiming to Trans Union that the reporting was accurate in response to Plaintiff's January 12th written dispute.

47. As a result, Plaintiff has suffered actual damages as explained in the statement of facts above.

48. The written agreement calls for attorneys' fees and costs to be awarded to the prevailing party for enforcing the agreement.

49. As a result of Defendant's breach, Plaintiff has been forced to incur attorneys' fees and costs to seek formal enforcement of the written agreement, when Defendant could have avoided this action by simply requesting that the tradeline be deleted in response to Plaintiff's January 12th dispute letter.

50. Because this cause of action is focused upon Defendant's failure to comply with the written agreement, it is therefore not pre-empted by the Federal FCRA, because such pre-emption only applies when the state law cause of action is covered by (or conflicts with) a specific statute within the FCRA, and there is no statute within the FCRA that addresses a party's breach of a written agreement to update reporting with specific information.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and Plaintiff be awarded damages as follows:

1. Actual damages in the amount of $7,500.00, or as the jury may allow;

2. Plus punitive damages of $5,000.00 for each individual willful violation of Calif. Civ. Code § 1785.25(a), pursuant to Calif. Civ. Code § 1785.31(a)(2)(A)-(C);

3. Plus statutory damages of $1,000.00 for each individual willful violation of the Federal FCRA, pursuant to 15 U.S.C. §1681n(a)(1)(A);

4. Plus punitive damages in an amount to be determined by a jury for willful

1  violations of the Federal FCRA, pursuant to 15 U.S.C. §1681n(a)(2);

2      5.    Plus general and special damages in the amount of $5,000.00, or as the jury may award, for breach of contract pursuant to Calif. Civ. Code §3300;

    6.    Injunctive relief to order Defendant to remove the report from Plaintiff's consumer credit reports, pursuant to Calif. Civ. Code § 1785.31(b);

    7.    Any reasonable attorney's fees and costs to maintain the instant action.

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

                                SEMNAR & HARTMAN, LLP

DATED: 2/14/17                     /s/ *Jared M. Hartman*
                                         JARED M. HARTMAN, ESQ.
                                         Attorneys for Plaintiff